UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
DIANA DIPIANO,                              :
                                            :     **MEMORANDUM DECISION AND**
                              Plaintiff,    :     **ORDER**
                                            :
                  - against -               :     24-cv-4901 (BMC)
                                            :
THE NEW YORK CITY DEPARTMENT                :
OF EDUCATION and THE CITY OF NEW            :
YORK,                                       :
                                            :
                              Defendants.   :
-------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff alleges that defendants subjected her to discrimination, retaliation, and a hostile

work environment because of her sex and sexual orientation.  Before the Court is defendants'

motion for summary judgment.  For the reasons set forth below, defendants' motion is granted in

part and denied in part.

## BACKGROUND

Plaintiff began working for the New York City Department of Education ("DOE") in

2010 as a special education teacher.  From Fall 2018 to Spring 2023, plaintiff worked as a

behavior coach at P.S. K004 ("P4k"), a school network in District 75.  Plaintiff maintained an

office at Site 667 ("P.S. 667") during the 2021-2022 and 2022-2023 school years but, as an "out-

of-classroom" instructor, worked with teachers all over the district and responded to incidents at

all sites within the district.  For the 2021-2022 and 2022-2023 school years, the principal for all

P4k sites was Rebecca Schropfer, and the assistant principal for P.S. 667 was Pamela Duarte.

Beginning in Fall 2021, Duarte would remark, to plaintiff and others, that plaintiff

"look[ed] like a gym teacher" and wore outfits that were "gym type like."  She continued to

make these comments throughout the 2021-2022 and 2022-2023 school years.  In January 2022, plaintiff was supervising hallway lunch with Schropfer, Duarte, and two other coworkers when Schropfer told Duarte, "Pam, I think my boobs smell.  Smell them."  Supposedly, she had spilled something on her shirt.  Duarte responded, "[E]w, Dip's gay, you [plaintiff] do it."  Although plaintiff is gay, at that time, she had not come out to her coworkers.

From the winter of 2022 until the end of the 2022-2023 school year, Duarte would tell plaintiff, while gagging, that she didn't know how gay people – or plaintiff – did "it," would say how messy "it" is and that she was disgusted by it, and would announce that she personally was "strictly dickly."  Duarte made the "strictly dickly" comment twenty or more times during this period.  Plaintiff never confronted Duarte, but she told Schropfer in passing that Duarte was distasteful, unprofessional, and rude.

In August 2022, while plaintiff was a classroom teacher for the Summer 2022 session, Duarte placed paraprofessional Jennings in plaintiff's classroom as a substitute for plaintiff's absent paraprofessional.  Plaintiff had previously seen Jennings working at P4k and had become aware of several uncomfortable interactions between him and female co-workers, including asking female coworkers for hugs and dates.  During one of plaintiff's lessons, Jennings sat in plaintiff's line of view and proceeded to eat an ice cream sandwich in a manner that plaintiff interpreted as suggestive of oral sex (the "August 4, 2022 Jennings incident") – an interpretation which Jennings denied when plaintiff removed him from the classroom.  Plaintiff does not know why Jennings was placed in her classroom that day as opposed to a different paraprofessional.  Plaintiff spoke to Duarte after the incident, who told plaintiff there was nothing she could do about it.  But Jennings was never again placed in plaintiff's classroom.

In January 2023, plaintiff learned in a meeting with Duarte and Schropfer that she would be substituting for a gym teacher at P.S. 81.  This gym teacher assignment lasted two to three months.  Then, in May 2023, Duarte assigned plaintiff a substitute gym teacher role at P.S. 667.  Save for a brief return to her behavior coach role around March/April 2023, plaintiff was a substitute gym teacher from January 2023 through May 2023 for approximately three to four months total.  Out-of-classroom instructors such as plaintiff received substitute assignments before classroom teachers, and plaintiff's employment contract stated that she might need to substitute for five periods a week.  Although plaintiff did not have a physical education license, she did not need one to substitute for the gym teachers on a temporary basis.

On May 30, 2023, plaintiff filled out a preference sheet for the 2023-2024 school year, ranking her top three preferences for school site location and student-teacher-paraprofessional ratio.  Plaintiff and other P4k instructors completed this form each year.  The preferences were not binding on school administrators, and there was no guarantee that an instructor would receive any of her three preferences.  Plaintiff identified her preferences as, in order: (1) P.S. 667 and an 8:1:1 ratio; (2) P.S. 667 and a 12:1:1 ratio; and (3) P.S. 667 and an 8:1:1 ratio.  A June 2023 tentative organization sheet placed plaintiff at P.S. 667 with an 8:1:1 ratio.  But in August 2023, Duarte informed plaintiff that her official placement would be at P.S. 65 with a 6:1:1 student-teacher-paraprofessional ratio.

Plaintiff complained to the new principal of P4k, Ashley Hodge,[1] about her placement at P.S. 65.  In an introductory email to Hodge, plaintiff questioned the decision while acknowledging that placement decisions "must be made based on site/student need."  Hodge met with plaintiff and plaintiff's union representative on September 9, 2023 to discuss the issue

---

[1] Principal Schropfer resigned in June 2023, after the tentative organization sheet was distributed.  Hodge replaced Schropfer in August 2023, a few weeks before the official organization sheet was distributed.

further.  At this meeting, plaintiff told Hodge, among other things, that she believed her placement at P.S. 65 was a result of Duarte discriminating against her because of her sexual orientation.  Hodge asked plaintiff whether she was familiar with DOE's Office of Equal Opportunity and Diversity Management ("OEO").  She then reminded plaintiff that she should be making formal complaints to OEO, given that plaintiff's allegations concerned matters that occurred before Hodge became principal.  Plaintiff was ultimately placed at P.S. 65 with a 6:1:1 student-teacher-paraprofessional ratio for the 2023-2024 school year.

On September 7, 2023, a day prior to the meeting with Hodge, plaintiff made a complaint to the Special Commission for Investigations ("SCI") alleging sexual orientation discrimination and hostile work environment against Duarte.  SCI forwarded this complaint to OEO.  On September 17, 2023, plaintiff made a complaint to OEO directly, again alleging discrimination against Duarte.[2]  On September 21, 2023, plaintiff filed a notice of claim with defendants in connection with her allegations in this case.  Finally, on October 16, 2023, plaintiff filed a charge of discrimination with the EEOC, alleging sex discrimination and retaliation.

In November 2023, while plaintiff was teaching at P.S. 65, Assistant Principal Valerie Edouard visited plaintiff's classroom for an informal evaluation.  Edouard had become assistant principal the month prior.  After the evaluation, plaintiff complained to her union representative that Edouard improperly conducted the evaluation without a paraprofessional present.  As a result, Hodge removed the evaluation from plaintiff's file and had Edouard conduct a new evaluation a few days later.  In that evaluation, Edouard ranked plaintiff as "developing" or ineffective" in five out of the eight categories.

---

[2] OEO administratively closed plaintiff's referred and direct OEO complaints upon learning that plaintiff had filed a parallel complaint with the EEOC.  OEO then referred the matter to DOE's Office of the General Counsel.

In May 2024, plaintiff was involved in an altercation with paraprofessional Laspina. Plaintiff confronted Laspina because plaintiff had heard rumors that Laspina was telling other paraprofessionals not to trust her.  Things escalated, culminating with plaintiff calling the police and filing a police report.  After the altercation, Laspina texted a coworker and said, among other things, "I'm going to smoke that dyke bitch."  Plaintiff alerted Hodge and Edouard via email about the incident and submitted a complaint to SCI, reporting Laspina's alleged threats. Laspina was removed from P.S. 65 shortly thereafter and Hodge submitted a "Do Not Use" form for him, notifying the District that Laspina was not to return to P4k.  Meanwhile, Assistant Principal Byrdsong investigated the incident.

On May 31, 2024, the EEOC issued plaintiff a right-to-sue letter in connection with her EEOC complaint against defendants.  On July 15, 2024, plaintiff commenced the instant action.

On January 8, 2025, after interviews with plaintiff and four witnesses, Byrdsong issued his report on the Laspina incident.  He concluded that plaintiff and Laspina "got involved in an extremely heated verbal altercation in front of students."  On January 21, 2025, Hodge issued a non-file letter for plaintiff, substantiating Byrdsong's report and finding that plaintiff engaged in inappropriate and/or unprofessional behavior.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view all facts in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v.

NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994). Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson, 477 U.S. at 256.

The Second Circuit has instructed district courts to be wary of granting summary judgment in employment discrimination cases where the employer's intent is at issue. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). "[W]ritings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers," so "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Id. But "even in the fact-intensive context of discrimination cases," summary judgment may be appropriate. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). Accordingly, the function of the court on a motion for summary judgment in an employment discrimination case "is to determine whether the 'proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" Cronin v. Aetna

6

Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995) (quoting Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994)).

## I.    Timeliness

### A.    Title VII

"Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within ... 300 days 'after the alleged unlawful employment practice occurred.'" Militinska-Lake v. Kirnon, No. 22-cv-2667, 2023 WL 7648511, at *3 (2d Cir. Nov. 15, 2023) (summary order) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78-79 (2d Cir. 2015)).  "'Thus, only events that occurred during the 300-day period prior to filing ... are actionable under Title VII.'"  Hoffman v. Williamsville Sch. Dist., 443 F. App'x 647, 649 (2d Cir. 2011) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir.1996)).

But under the "continuing violation" exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Militinska-Lake, 2023 WL 7648511, at *3.  "[A] continuing violation may be found where there is proof of specific ongoing discriminatory polic[i]es or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994).

Plaintiff here filed her EEOC complaint on October 16, 2023, which means that discrete acts that occurred before December 20, 2022 are not actionable under Title VII.  Defendants conclude that plaintiff cannot premise her Title VII discrimination, retaliation, or hostile work

environment claims on the January 2022 Schropfer incident or the August 4, 2022 Jennings incident because these are discrete acts that occurred before December 20, 2022.

Plaintiff does not argue that the Jennings incident was an adverse action for purposes of her discrimination or retaliation claims.  Plaintiff also does not argue that the Jennings incident contributed to a hostile work environment. Because plaintiff does not premise any of her claims on the August 4, 2022 Jennings incident, the Court need not decide whether the incident is actionable under Title VII.[3]

Defendants rely on far too narrow an interpretation of the continuing violation doctrine with respect to the January 2022 Schropfer incident.  Duarte's offensive comments to plaintiff are at the core of plaintiff's hostile work environment claim.  And although Duarte made such comments before December 20, 2022, she certainly continued making them throughout the timely period.  Duarte's conduct toward plaintiff in January 2022 – calling plaintiff gay and outing her in front of coworkers – is "sufficiently similar" to her conduct toward plaintiff throughout the timely period "to be considered part of a single policy."  See Dash v. Bd. of Educ. of City Sch. Dist. of New York, 238 F. Supp. 3d 375, 389 (E.D.N.Y. 2017) (quoting Sotomayor v. City of New York, 862 F.Supp.2d 226, 233 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013)).  Accordingly, the January 2022 Schropfer incident is actionable as part of plaintiff's hostile work environment claim under Title VII.[4]

---

[3] Nor could she. For the Jennings incident to form part of plaintiff's hostile work environment claim, which relies entirely on Duarte's conduct, the Court would have to make two inferences that are not supported by the record: that Duarte placed Jennings in plaintiff's classroom to harass plaintiff, and that the way Jennings ate his ice cream was suggestive of oral sex.  But plaintiff's only evidence is her own speculation about Duarte and Jennings's motivations.

[4] As explained later, the January 2022 Schropfer incident also supports an inference of discriminatory animus with respect to one of plaintiff's discrimination claims.  But whether the incident is timely with respect to the discrimination claim is irrelevant because plaintiff is not alleging that the incident was an adverse action; rather, she is offering it as circumstantial evidence of discrimination.

**B.      NYSHRL and NYCHRL**

"[P]ursuant to New York Education Law §§ 3813(1), (2-b), a one-year statute of limitations governs NYSHRL and NYCHRL claims against school districts[.]"  Riccardo v. New York City Dep't of Educ., No. 16-cv-4891, 2016 WL 7106048, at *6 (S.D.N.Y. Dec. 2, 2016) (citations omitted), report and recommendation adopted sub nom. United States v. New York City Dep't of Educ., No. 16-cv-4291, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017).  Defendants argue that "any SHRL or CHRL claims that accrued more than one year prior to July 15, 2024," when plaintiff filed her complaint in this case, "i.e. prior to July 15, 2023, are time-barred."

Courts are divided regarding whether filing an EEOC complaint tolls the one-year statute of limitations on NYSHRL and NYCHRL claims against school districts.  See id.  This Court finds that there is "no apparent reason" that an EEOC complaint should toll the three-year statute of limitations in NYSHRL and NYCHRL claims that are not against school districts and their officers but not toll the one-year statute of limitations in NYSHRL and NYCHRL claims against school districts and their officers.  See id. at *7.  Accordingly, the one-year statute of limitations for NYSHRL and NYCHRL claims against school districts is tolled while an EEOC charge is pending.  See id.

"A complaint is pending before the EEOC during the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter."  Id. at *7 (internal quotation marks and citation omitted).  Plaintiff filed her EEOC complaint on October 16, 2023 and received a right-to-sue letter on May 31, 2024.  On July 15, 2024, forty-five days after receiving the right-to-sue letter, plaintiff filed her complaint in this case.  Thus, claims that accrued on or after November 30, 2022 – 320 days before plaintiff filed her EEOC complaint – are within the one-year statute of limitations.

As a result, the only incidents that could theoretically be time-barred are Duarte's "gym teacher" comments to plaintiff before November 30, 2022 and the January 2022 Schropfer incident. But the continuing violation doctrine saves these claims. The NYSHRL's continuing violation doctrine "mirrors that of Title VII," although the NYCHRL's continuing violation doctrine is "more generous." Taylor v. City of New York, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016). The Court has already held that the January 2022 Schropfer incident is part of a continuing violation under Title VII, so claims premised on this incident are timely under the NYSHRL's same standard and the NYCHRL's more generous standard. The Court further holds that any of Duarte's "gym teacher" comments that occurred before November 30, 2022 are also timely under the NYSHRL and NYCHRL as part of that same continuing violation. Duarte repeatedly made these comments throughout the timely period. And, as explained later, a reasonable person could infer that these comments were rooted in Duarte's discriminatory stereotypes about how women should look and how lesbian women do look and act, particularly in the context of Duarte's more direct comments about lesbian sex.

## II.    Discrimination

Plaintiff's sex and sexual orientation discrimination claims under Title VII, the NYSHRL, and the NYCHRL are analyzed under the three-step burden shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Montgomery v. New York City Transit Auth., No. 17-cv-6522, 2019 WL 1258482, at *3 (S.D.N.Y. March 19, 2019), aff'd, 806 F. App'x 27 (2d Cir. 2020).

The plaintiff must first establish a prima facie case of discrimination. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the plaintiff satisfies her prima facie case, there is an inference of discrimination which shifts the burden to the defendant to proffer a

legitimate, nondiscriminatory business rationale to justify its adverse employment action.  Id. at 253 (citing McDonnell Douglas, 411 U.S. at 802-03).  If the defendant satisfies its burden, the burden shifts back to the plaintiff to raise a factual issue that the defendant's offered reasons were a pretext for discrimination, or that her prima facie case, even when considered against the defendant's evidence, is sufficiently compelling that a jury could reasonably find that she was discriminated against because of her class membership.  See Bonaffini v. City Univ. of New York, 751 F. Supp. 3d 67, 74 (E.D.N.Y. 2024).  In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case.'"  James v. N.Y. Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (cleaned up) (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 148-49 (2000)).  "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited ... discrimination occurred.'"  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quoting James, 233 F.3d at 156).

As explained below, the Court grants summary judgment on plaintiff's title VII, NYSHRL, and NYCHRL claims premised on her placement at P.S. 65 for the 2023-2024 school year, and denies summary judgment on plaintiff's Title VII, NYSHRL, and NYCHRL discrimination claims premised on her gym teacher assignments throughout January 2023 to May 2023.

### A.    Plaintiff's Prima Facie Case

The following well-established four-factor test is used to determine whether there is a prima facie case of discrimination: (1) plaintiff must belong to a protected class; (2) plaintiff must have been qualified for the job; (3) plaintiff must have suffered an adverse employment

action; and (4) the circumstances surrounding the adverse employment action must give rise to an inference of discrimination.  See, e.g., Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  In considering whether the plaintiff has made her prima facie showing, a court should consider only the plaintiff's proffered evidence, not the defendant's evidence in response to it. See id.  Plaintiff's burden at this stage is *de minimis*.  See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

### 1.    *Adverse Employment Actions*

It is undisputed that plaintiff belongs to a protected class and was qualified for her job. As for adverse employment actions, plaintiff claims two: (1) her placement at P.S. 65 for the 2023-2024 school year and (2) her substitute gym teacher assignments throughout January 2023 to May 2023.

The Supreme Court's decision in Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024), clarified that a plaintiff alleging an adverse employment action under Title VII "does not have to show ... that the harm was significant[] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." (Internal quotation marks and citation omitted).  Instead, plaintiff need only show "some harm respecting an identifiable term or condition of employment."  Id.  The allegedly adverse action – in Muldrow, the plaintiff's transfer – "must have left her worse off, but need not have left her significantly so."  Id. at 359.  The Second Circuit recently held that Muldrow "overruled [Second Circuit] precedent, which required that the changes to a term or condition of employment be *materially* adverse."  Back v. Hapoalim, No. 24-cv-1064, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (citing Muldrow, 601 U.S. at 353, 353 n.1).[5]

_____

[5] As this Court has expressed previously, it is doubtful that Muldrow went that far.  See Bonaffini v. City of New York, 751 F. Supp. 3d 67, 75-77 (E.D.N.Y. 2024).  Rather, Muldrow clarified the requirements of Title VII and

Pre-Muldrow, this Court held that a reassignment in the educational context would be materially adverse only "if the new responsibilities [were] '*materially* less prestigious, *materially* less suited to [a plaintiff's] skills and expertise, or *materially* less conducive to career advancement.'" See, e.g., Diaz v. Poly Prep Day Sch., No. 21-cv-6611, 2022 WL 2803259, at *6 (E.D.N.Y. July 18, 2022) (emphases added). Now, post-Muldrow, the term "materially" is disfavored – courts must make more precise measurements of the actual harm suffered. Consequently, to satisfy the third element of her prima facie case of Title VII discrimination, plaintiff must show only that the allegedly adverse assignments – the teaching role at P.S. 65 for the 2023-2024 school year and the substitute gym teaching roles throughout January 2023 to May 2023 – were less prestigious, less suited to her skills and expertise, or less conducive to her career advancement, thereby leaving her worse off with respect to an identifiable term or condition of her employment.

Even with this more specific threshold, and viewing all evidence in the light most favorable to plaintiff, plaintiff's placement at P.S. 65 for the 2023-2024 school year was not an adverse action. It is undisputed that plaintiff completed a preference sheet regarding her assignment for the 2023-2024 school year. It is also undisputed that plaintiff did not identify P.S. 65 as her preferred school site or 6:1:1 as her preferred student-teacher-paraprofessional ratio in any of her three listed preferences. But plaintiff was not entitled to receive any of her preferences. And the fact that plaintiff historically always received one of her preferences did

---

instructed the lower courts against using qualifiers like "material" and "significant" to construe the scope of adverse employment actions more narrowly than Title VII envisions. Id. at 75. As this Court noted in Bonaffini, the problem was that terms like "material" and "significant" had been so narrowly construed by other Circuits that even egregious harm did not fall within them. If one drills down into the facts of the Second Circuit cases, in contrast, one sees that had never been a problem in the Second Circuit – the Second Circuit cases cited in Muldrow were fully consistent with the standard Muldrow announced, even though those Second Circuit cases used terms like "material" and "significant." This Court believes, therefore, that the proper interpretation of Muldrow is to convey caution to lower courts not to apply too exacting a standard in determining whether harm rises to the level of an adverse employment action, regardless of the adjective used.

not entitle her to continue receiving her preference, or even make it more likely than not that she would continue receiving her preference. Finally, working as an in-classroom teacher at P.S. 667 was not a term or condition of plaintiff's employment, as is quite clear from the fact that prior to the 2023-2024 school year, plaintiff was an *out-of-classroom behavior coach* (with no student-teacher-paraprofessional ratio at all). For these reasons, plaintiff cannot show any harm relating to an identifiable term or condition of employment.

Even if plaintiff were able to show that the placement at P.S. 65 affected an identifiable term or condition of her employment, she does not show how the placement was less prestigious, less suited to her skills and expertise, or less conducive to her career advancement. Plaintiff points to several reasons why being a teacher at P.S. 65 with a 6:1:1 ratio was worse than being a teacher at P.S. 667 with an 8:1:1 or 12:1:1 ratio – but she is making the wrong comparison. Plaintiff was "transferred" from a behavior coach role at P.S. 667 to a teaching role at P.S. 65. All that matters, then, is whether the P.S. 65 location left plaintiff worse off when compared to the P.S. 667 location. The only argument plaintiff makes regarding the school sites is that they "entailed different geographic locations." Plaintiff does not show how working at a different geographic location, by itself, made her worse off. Therefore, plaintiff's Title VII claims premised on her placement at P.S. 65 for the 2023-2024 school year fail for lack of an adverse action.

Before the NYSHRL's amendment in June 2019, employment discrimination claims under the NYSHRL were historically "analyzed identically to claims under Title VII" – meaning that a plaintiff had to show that the action alleged to be adverse was materially so. See Desiderio v. Hudson Techs., Inc., No. 22-cv-0541, 2025 WL 1285278, at *9 (S.D.N.Y. May 2, 2025) (internal quotation marks and citations omitted). Although this amendment made clear that

NYSHRL claims should be analyzed separately from, and more liberally than, Title VII claims, "it is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims." Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (citation omitted). Courts have consistently recognized that the amended NYSHRL standard has, at least, "come closer" to the NYCHRL standard, under which a plaintiff must show that she was treated "less well" because of discriminatory intent. See Desiderio, 2025 WL 1285278, at *9. The Court need not determine the NYSHRL standard for the purpose of evaluating plaintiff's discrimination claim relating to her placement at P.S. 65 because the claim fails even under the NYCHRL's more liberal standard. As explained above, plaintiff does not show how the placement at P.S. 65 instead of P.S. 667 constituted "less well" treatment.

Plaintiff has, however, shown that her substitute gym teacher assignments throughout January 2023 to May 2023 were adverse employment actions under Title VII and the less-stringent NYSHRL and NYCHRL. Plaintiff was pulled from her behavior coach position to fill in as a gym teacher for a total time of three to four months. Plaintiff was not a gym teacher and, given that she did not have a physical education license, apparently had no aspirations to become a gym teacher. Although plaintiff's contract indicated that she may need to cover five periods a week of any subject, the contract seemingly did not anticipate that plaintiff would have to cover gym periods for multiple months, sometimes at eight periods a day. A reasonable juror could find that plaintiff's frequent assignment to substitute gym teacher roles caused at least some harm to her with respect to the terms and conditions of her employment.

2.      *Inference of Discrimination*

Thus, only the substitute gym teacher assignments make it to the fourth element of plaintiff's prima facie discrimination case.  "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that an adverse employment decision was motivated at least in part by an 'impermissible reason.'"  Diaz, 2022 WL 2803259, at *7 (quoting Vega Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015)).  "A plaintiff can meet that burden through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination."  Id.

"[I]nvidious comments about others in the employee's protected group," coupled with a "showing that such comments perpetuated or were based on ... stereotypes," may raise an inference of discriminatory animus.  Murphy v. Stonybrook Univ. Hosp., No. 20-cv-1298, 2022 WL 20527322, at *5 (E.D.N.Y. Sept. 13, 2022).  It "takes no special training to discern stereotyping" in the view that a lesbian woman wearing masculine or athletic clothing would be a good gym teacher.  See Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 120 (2d Cir. 2004).  Here, it is reasonable to infer that Duarte believed plaintiff would make a good gym teacher because of her stereotypes about how women should dress (i.e., femininely) and how lesbian women are (i.e., masculine, interested in athletics).

To be clear, the "gym teacher" comments perhaps would not be enough, on their own, to raise an inference of discriminatory intent (although it's close, considering that Duarte made the remarks on many occasions spanning two school years).  But Duarte didn't say only that plaintiff looked like a gym teacher.  Rather, beginning in January 2022 and through the end of the 2022-2023 school year, Duarte continually made offensive, blatantly homophobic comments towards

16

plaintiff.  She outed plaintiff in front of coworkers.  She expressed disgust at lesbian sex and feigned gagging.  She repeatedly prodded how plaintiff and other lesbian women were able to do "it."  She told plaintiff that she was "strictly dickly" at least twenty times.  This is the contemporaneous context which informs the Court's, and plaintiff's, understanding of Duarte's "gym teacher" comments as more than mere observations about plaintiff's clothing.  Plaintiff has therefore established a prima facie case of discrimination under Title VII, the NYSHRL, and the NYCHRL concerning the gym teacher assignments between January 2023 and May 2023.

### B.    Defendants' Legitimate Reasons

Under the McDonnell-Douglas burden-shifting framework, the burden now shifts back to defendants to show a legitimate non-discriminatory reason for assigning plaintiff to substitute gym teacher roles in the winter and spring of 2023.  Defendants are right that their burden of production, like a plaintiff's burden to show a *prima facie* case, "is not a demanding one" and that they have met it.  See Bickerstaff v. Vassar College, 196 F.3d 435, 446.  The parties agree that plaintiff's contract stated that she may have to cover for others, and that out-of-classroom instructors like plaintiff were assigned to cover substitute roles before classroom teachers.  Beyond this, defendants also rely on Schropfer's statement to plaintiff that the January 2023 position would not have been filled if plaintiff did not accept it, and Duarte's testimony that plaintiff, unlike the two other instructional coaches, was not occupied with a set schedule at the time of the May 2023 assignment.  The fact that the gym teacher roles needed to be filled and that plaintiff's contract permitted her to fill them constitute legitimate reasons.

### C.    Pretext

"[U]nless the defendants' proffered nondiscriminatory reason is 'dispositive and forecloses any issue of material fact,' summary judgment is inappropriate."  Back v. Hastings On Hudson Union Free Sch. Dist, 365 F.3d at 124 (citation omitted).  Plaintiff has clearly produced

sufficient evidence to defeat summary judgment on the discrimination claims based on her gym teacher assignments. Plaintiff's prima facie case, even when considered against defendants' evidence, is sufficiently compelling that a jury could reasonably find that she was given substitute gym teacher assignments on the basis of her sexual orientation.

## III.    <u>Retaliation</u>

The <u>McDonnell-Douglas</u> burden-shifting framework applies also to retaliation claims brought pursuant to Title VII, the NYSHRL, and the NYCHRL. <u>See</u> <u>Edelman v. NYU Langone Health Sys.</u>, 141 F.4th 28, 45 (2d Cir. 2025). Thus, plaintiff must first make out a prima facie case of retaliation. <u>Id.</u> In the Title VII context, the plaintiff must demonstrate that (1) she engaged in protected activity; (2) the defendant was aware of that activity; (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse; [6] and (4) there was a causal connection between the protected activity and the materially adverse action or actions. <u>Id.</u> (citation omitted). By contrast, under the NYSHRL and NYCHRL, the plaintiff "must demonstrate that she took an action opposing her employer's discrimination and that, as a result the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." <u>Edelman</u>, 141 F.4th at 45 (internal quotation marks and citation omitted).

Defendants concede that plaintiff engaged in various protected activities, including: (1) filing a complaint with SCI on September 7, 2023; (2) complaining about discrimination to Principal Hodge on September 8, 2023; (3) filing a complaint with OEO on September 17, 2023; (4) filing a complaint with the EEOC on October 16, 2023; and (5) filing the instant lawsuit on July 15, 2024. Plaintiff claims two retaliatory actions: (1) Assistant Principal Edouard's

---

[6] Importantly, <u>Muldrow</u> clarified that the "materially adverse" standard still applies to Title VII retaliation claims. <u>See</u> <u>Muldrow</u>, 601 U.S. at 357.

November 10, 2023 evaluation and subsequent negative performance review for plaintiff and (2) the January 21, 2025 non-file letter issued to plaintiff following her altercation with Laspina. The Court finds that the former does not constitute a materially adverse action, and that the latter is not causally connected to plaintiff's protected activities.

Courts in this Circuit have disagreed as to whether a negative performance review, without further adverse consequences, can amount to a materially adverse action. See Petyan v. New York City L. Dep't, No. 14-cv-1434, 2015 WL 4104841, at *5 (S.D.N.Y. July 2, 2015). In this case, the Court finds that plaintiff has failed to establish that the performance review she received from Edouard was a materially adverse action. The mere fact that the review was supposedly negative does not compel the conclusion that it was materially adverse. Further, plaintiff has not established that the review was actually negative, as opposed to instructive or constructive. For these reasons and because there were no further adverse consequences, plaintiff has failed to establish that the performance review was a negative action, let alone an adverse one, let alone a *materially* adverse one. Plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims based on the performance review therefore fail.

The non-file letter might constitute a materially adverse action for purposes of retaliation. It details problematic conduct by plaintiff, warns of potential discipline (including termination), and stays in plaintiff's file for future DOE employers to see. But the Court need not make a definitive determination on this point because plaintiff has not satisfied causation. To prevail on a Title VII retaliation claim, retaliatory animus must be the but-for cause of the challenged adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). As for the NYSHRL and NYCHRL, the plaintiff "need only show that retaliatory animus was a

motivating factor, that is, that it played any role at all in the challenged conduct." Edelman, 141 F.4th at *49 (internal quotation marks and citation omitted).

Plaintiff relies entirely on temporal proximity between her June 21, 2024 complaint to SCI regarding Laspina and the January 21, 2025 non-file letter to establish causation. "[W]hen a plaintiff relies on temporal proximity alone to establish causation, courts 'uniformly hold that the temporal proximity must be very close,' which usually means less than three or four months." Gehlaut v. New York City Dep't of Educ., No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). Even assuming that this SCI complaint constitutes protected activity, "[i]n the absence of other factual allegations supporting causation," the seven-month gap between plaintiff's June 21, 2024 SCI complaint and the January 21, 2025 non-file letter is too long to support a plausible inference of causation under Title VII, the NYSHRL, and the NYCHRL. See id.; see also Sealy v. State Univ. of New York at Stony Brook, 834 F. App'x 611, 614 (2d Cir. 2020) (citing Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)) ("[A]dverse employment actions occurring approximately three months after protected activity are too attenuated to give rise to an inference of retaliation."). Plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims based on the non-file letter therefore fail.

The Court also summarily disposes of plaintiff's NYCHRL retaliation claim based on her placement at P.S. 65, as it has already explained above that moving to a different geographic location (the only plausibly harmful difference between plaintiff's prior role at P.S. 667 and new role at P.S. 65) is not a cognizable harm.

IV.    **Hostile Work Environment**

Title VII defines a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  The plaintiff must show that "the complained of conduct: (1) is objectively severe or pervasive – that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristics or protected activity."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted).  "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'"  Id. (quoting Harris, 510 U.S. at 23).

Defendants have sought summary judgment on the theory that the conduct at issue was not sufficiently severe or pervasive to create a hostile work environment, but they have not argued that the conduct of any of the implicated individuals was improperly imputed to defendants.  Accordingly, the Court addresses only the summary-judgment arguments regarding severity and pervasiveness that defendants have raised.  Even still, for the reasons explained earlier in this opinion, the Court will not consider the P.S. 65 placement, Edouard's performance review, the Jennings incident, and the Laspina incident (and subsequent non-file letter) in its calculus.  Consequently, the question is whether Duarte's offensive comments and the excessive

gym teacher assignments to plaintiff throughout January 2023 to May 2023 were, together, sufficiently severe and pervasive to create a hostile work environment.  Drawing all reasonable inferences in plaintiff's favor, the Court finds that material disputes of fact preclude summary judgment on plaintiff's Title VII hostile work environment claim.

Duarte frequently made discriminatory comments towards plaintiff over the course of two school years.  Duarte repeatedly told plaintiff that she looked like a gym teacher and would make a good one, which a reasonable person could find was based on her stereotypes about how women *should* look and how lesbian women *do* look and act (particularly when coupled with the offensive comments about lesbian sex).  Further, plaintiff was excessively assigned to substitute gym teacher roles over the course of three to four months, and Duarte was involved in the assignment decisions.  Finally, Duarte outed plaintiff in front of coworkers and, on twenty or more occasions, told plaintiff that she was "strictly dickly" while expressing disgust at lesbian sex.  These were not "stray remarks."  A reasonable jury could find that plaintiff was subject to "a steady barrage of opprobrious [discriminatory] comments."  Knox v. CRC Mgmt. Co., LLC, 134 F.4th 39, 51 (2d Cir. 2025) (citation omitted).

Therefore, the Court denies summary judgment as to plaintiff's Title VII hostile work environment claim.  Further, the Court denies summary judgment as to plaintiff's hostile work environment claim premised on the same conduct under the "more lenient" NYSHRL and NYCHRL standard.  See Wheeler v. Praxair Surface Techs., Inc., 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023).

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part as set forth above.  The following of plaintiff's claims will proceed to trial: (1) discrimination claims under Title VII, the NYSHRL, and the NYCHRL based on her substitute gym teacher

assignments throughout January 2023 to May 2023; (2) hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL based on Duarte's conduct/comments throughout 2021-2023 and the substitute gym teacher assignments. The remaining claims are dismissed.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
      September 14, 2025